**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 0:22-cv-61270-WPD**

LISA CRICHLOW HELLY, individually and
on behalf of all others similarly situated,　　　　　**CLASS ACTION**

　　　　Plaintiff,　　　　　　　　　　　　　　**JURY TRIAL DEMANDED**

v.

SHUTTERFLY LIFETOUCH, INC.,

　　　　Defendant.
_____/

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff Lisa Crichlow Helly brings this class action against Defendant Shutterfly, LLC d/b/a

Lifetouch, and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and

experiences, and, as to all other matters, upon information and belief, including investigation conducted

by Plaintiff's attorneys.

**NATURE OF THE ACTION**

1.　　　This is a putative class action under the Florida Telephone Solicitation Act

("FTSA"), Fla. Stat. § 501.059.

2.　　　Over two years after Plaintiff made a purchase on Defendant's website, Defendant

sent text message solicitations to promote its good and services.

3.　　　Defendant did so without the requisite consent required under the FTSA.

4.　　　Defendant's practice of sending text message solicitations without consent has

caused Plaintiff and others harm, including violations of their statutory rights, statutory damages,

annoyance, nuisance, and invasion of their privacy.

5.      Through this action, Plaintiff seeks an injunction and statutory damages on behalf of herself and the Class members, as defined below, and any other available legal or equitable remedies resulting from the unlawful actions of Defendant.

## PARTIES

6.      Plaintiff is, and at all times relevant hereto was, a citizen and resident of Broward County, Florida.

7.      Plaintiff is, and at all times relevant hereto was, an individual and a "called party" as defined by Fla. Stat. § 501.059(1)(a) in that he was the regular user of cellular telephone number that received Defendant's telephonic sales calls.

8.      Defendant is, and at all times relevant hereto was, a foreign corporation and a "telephone solicitor" as defined by Fla. Stat. § 501.059(f).

## JURISDICTION AND VENUE

9.      This action is within the original jurisdiction of this Court pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), which grants district courts original jurisdiction over class actions in which the amount in controversy exceeds $5,000,000 and any member of the class of plaintiffs is a citizen of a State different from any defendant. As set forth by Defendant in its Notice of Removal, this action satisfies each of the requirements of § 1332(d)(2) for original jurisdiction under CAFA the required diversity of citizenship under CAFA is satisfied because "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). *See* Notice of Removal, [DE 1].

10.     Defendant is subject to personal jurisdiction in Florida because this suit arises out of and relates to Defendant's contacts with this state. Defendant made or caused to be made

telephonic sales calls into Florida without the requisite prior express written consent in violation of the FTSA. Plaintiff received such calls while residing in and physically present in Florida.

11.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction, and because a substantial part of the events or omissions giving rise to the claim occurred in this District.

**FACTS**

12.      Defendant owns and operates a website located at www.lifetouch.com. Defendant has complete control over the design and content of the website.

13.      Defendant utilizes the website in part to harvest consumer telephone numbers which it then utilizes for robotext marketing campaigns.

14.      On or about October 7, 2018, March 1, 2019, and March 3, 2020, Plaintiff utilized the following on-line form to make purchases on Defendant's website:



15.      At that time, Plaintiff did <u>not</u> voluntarily consent or otherwise agree to receive automated text messages from Defendant regarding Defendant's property, goods, or services.

16.     As depicted above, Defendant's website contains hyperlinks to lengthy legal terms, including an arbitration provision buried in Defendant's Terms and Conditions.

17.     As depicted above, the language that is supposed to alert consumers to Defendant's lengthy legal provisions is printed in tiny font considerably smaller than the font used in the surrounding website elements, and indeed in a font so small that it is barely legible to the naked eye.

18.     Moreover, the comparatively larger font used in all of the surrounding text naturally directs a visitor's attention everywhere else, including towards the large green "Submit Payment" button shown above.

19.     Further, the text of the "Submit Payment" button provides no indication that it would bind a visitor clicking on the button to a set of terms and conditions.

20.     And the textual notice is further deemphasized by the overall design of the webpage, in which other visual elements draw the user's attention away from the barely readable critical text.

21.     The design and content of Defendant's webpage draw a visitor's attention away from the most important part of the page: an approximately twenty-page document that contains numerous significant legal provisions.

22.     Defendant's website does not adequately call attention either to the existence of the Terms and Conditions or the fact that, by clicking the "Submit Payment" button, visitors were agreeing to be bound by those terms, including an arbitration provision.

23.     Undeterred by Plaintiff's lack of consent, and apparently (incorrectly) believing that it could force any claim into individual arbitration, Defendant sent telephonic sales call to Plaintiff's cellular telephone number over two years later, including the following on or about May 12, 2022, May 26, 2022, and June 6, 2022:

5



99224 ›

**May Apply, Reply STOP to CANCEL**

Today 18:03

**Do you like savings? How about 40% off your Lifetouch purchase of 44.99? Use code BOAT https://bit.ly/3yVilq5 Msg&Data Rates May Apply, Reply STOP to CANCEL**

24.     The purpose of Defendant's telephonic sales calls was to solicit the sale of Defendant's goods and/or services.

25.     Defendant caused similar telephonic sales calls to be sent to at least 30,000 individuals located in Florida. *See* Notice of Removal, [DE 1], at 8.

26.     Plaintiff is the regular user of the telephone number that received the above telephonic sales calls.

27.     Defendant maintains and/or has access to outbound transmission reports for all text messages sent advertising/promoting its services and goods. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiff and the Class members.

28.     To send the text message, Defendant used a messaging platform (the "Platform"), which permitted Defendant to transmit thousands of text messages automatically and without any human involvement.

29.     Defendant was not required to and did not need to utilize the Platform to send messages to Plaintiff and the Class members. Instead, Defendant opted to use the Platform to maximize the reach of its text message advertisements at a nominal cost to Defendant.

30.     The Platform has the capacity to select and dial numbers automatically from a list of numbers.

31.     The Platform has the capacity to schedule the time and date for future transmission of text messages.

32.     The Platform also has an auto-reply function that results in the automatic transmission of text messages.

33.     Defendant was not required to and did not need to utilize the Platform to send messages to Plaintiff and the Class members. Instead, Defendant opted to use the Platform to maximize the reach of its text message advertisements at a nominal cost to Defendant.

34.     Defendant would be able to conduct its business operations without sending automated text messages to consumers.

35.     Defendant would be able to send automated text messages to consumers, and in compliance with the FTSA, by securing the proper consent from consumers prior to sending text messages.

36.     Defendant would be able to send text messages to consumers without consent by utilizing a non-automated text messaging system.

37.     Accordingly, it is not impossible for Defendant to comply with the FTSA in the context of transmitting text messages.

38.     The burden and cost to Defendant of securing consent from consumers that complies with the FTSA is nominal.

39.     Compliance with the FTSA will not result in Defendant having to cease its business operations.

40.     Compliance with the FTSA will not result in Defendant having the alter the prices of any goods or services it provides in the marketplace.

41.     Compliance with the FTSA will not force Defendant to seek regulatory approval from the State of Florida before undertaking any type of commercial transaction.

42.     Because a substantial part of Defendant's FTSA violations occurred in Florida, requiring Defendant's compliance with the FTSA will not have the practical effect of regulating commerce occurring wholly outside of Florida.

43.     Plaintiff never provided Defendant with express written consent authorizing Defendant to transmit telephonic sales calls to Plaintiff's cellular telephone number utilizing an automated system for the selection or dialing of telephone numbers.

44.     More specifically, Plaintiff never signed any type of authorization permitting or allowing the placement of a telephonic sales call by text message using an automated system for the selection or dialing of telephone numbers.

45.     Defendant's telephonic sales calls caused Plaintiff and the Class members harm, including statutory damages, inconvenience, invasion of privacy, aggravation, annoyance, and violation of their statutory privacy rights.

## CLASS ALLEGATIONS

### PROPOSED CLASS

46.     Plaintiff brings this lawsuit as a class action on behalf of herself individually and

on behalf of all other similarly situated persons as a class action pursuant to Federal Rule of Civil

Procedure 23. The Class that Plaintiff seeks to represent is defined as:

> **All persons in Florida who, (1) were sent more than one telephonic
> sales call regarding Defendant's property, goods, and/or services,
> (2) using the same equipment or type of equipment utilized to call
> Plaintiff.**

47.     Defendant and its employees or agents are excluded from the Class.

### NUMEROSITY

48.     Defendant has placed telephonic sales calls to telephone numbers belonging to at

least 30,000 consumers throughout Florida without their prior express written consent. The

members of the Classes, therefore, are believed to be so numerous that joinder of all members is

impracticable.

49.     Identification of the Class members is a matter capable of ministerial determination

from Defendant's call records.

### COMMON QUESTIONS OF LAW AND FACT

50.     There are numerous questions of law and fact common to the Class which

predominate over any questions affecting only individual members of the Class. Among the

questions of law and fact common to the Class are:

(a) Whether Defendant initiated telephonic sales calls to Plaintiff and the Class

members;

(b) Whether Defendant can meet its burden of showing that it had prior express written

consent to make such calls;

(c) Whether Defendants maintain an internal do-not-call list and instruct their employees on how to use the list; and

(d) Whether Defendant is liable for damages, and the amount of such damages.

51.     The common questions in this case are capable of having common answers and Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

## TYPICALITY

52.     Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

## PROTECTING THE INTERESTS OF THE CLASS MEMBERS

53.     Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

## SUPERIORITY

54.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

55.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**VIOLATION OF FLA. STAT. § 501.059**
**(On Behalf of Plaintiff and the Class)**

56.     Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

57.     It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

58.     A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

59.     "Prior express written consent" means an agreement in writing that:

1. Bears the signature of the called party;

2. Clearly authorizes the person making or allowing the placement of a telephonic sales call by telephone call, text message, or voicemail transmission to deliver or cause to be delivered to the called party a telephonic sales call using an automated system for the selection or dialing of telephone numbers, the playing of a recorded message when a connection is completed to a number called, or the transmission of a prerecorded voicemail;

11

3. Includes the telephone number to which the signatory authorizes a telephonic sales call to be delivered; and

4. Includes a clear and conspicuous disclosure informing the called party that:

    a. By executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called; and

    b. He or she is not required to directly or indirectly sign the written agreement or to agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

Fla. Stat. § 501.059(1)(g).

60.    Defendant failed to secure prior express written consent from Plaintiff and the Class members.

61.    In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

62.    Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers.

63.    As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation.  Plaintiff and the Class members are also entitled to an injunction against future calls. *Id*.

**COUNT II**
**Injunctive Relief Pursuant to Fla. Stat. § 501.059(10)(a)**
**(On Behalf of Plaintiff and the FTSA Class)**

64.    Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 55 as if fully set forth herein.

65.    Pursuant to section 501.059(10)(a), Plaintiff seeks injunctive relief prohibiting Defendant's unlawful conduct in the future to protect Plaintiff and the FTSA Class members from Defendant's unsolicited calls and practices.

66.    Defendant's ongoing and continuing violations have caused, and in the absence of an injunction will continue to cause, harm to Plaintiff and the FTSA Class members.

67.    Plaintiff and the FTSA Class members suffer irreparable harm if Defendant is permitted to continue its practice of violating the FTSA.

68.    The injuries that the Plaintiff and the FTSA Class members will suffer if Defendant is not prohibited from continuing to engage in the unlawful practices described herein far outweigh the harm that Defendant will suffer if it is enjoined from continuing this conduct.

69.    The public interest will be served by an injunction prohibiting Defendant from continuing to engage in the unlawful practices described herein.

70.    Accordingly, Plaintiff and the FTSA Class members seek an injunction requiring Defendant to implement policies and procedures to secure express written consent before engaging in any text message solicitations, and to follow such consent requirements.

71.    Plaintiff requests for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a)   An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiff as the representative of the Classes and Plaintiff's counsel as Class Counsel;

b)   An award of statutory damages for Plaintiff and each member of the Classes as applicable under the FTSA;

c)   An order declaring that Defendant's actions, as set out above, violate the FTSA;

d)   An injunction requiring Defendant to cease all telephonic sales calls made without express written consent, and to otherwise protect the interests of the Class;

e)   Such further and other relief as the Court deems necessary

## JURY DEMAND

Plaintiff, individually and on behalf of the Class, hereby demand a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with the communications or transmittal of the calls as alleged herein.

Dated: June 5, 2022

Respectfully Submitted,

**HIRALDO P.A.**

*/s/ Manuel S. Hiraldo*
Manuel S. Hiraldo, Esq.
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com
Telephone: 954.400.4713

*Counsel for Plaintiff and the Class*